Ronald E. Roselle, defendant-appellant, appeals a decision of the Franklin County Court of Common Pleas. The trial court adopted a settlement agreement agreed to by appellant and Associated Estates Realty Corporation, plaintiff-appellee.
Appellant was a tenant in an apartment complex owned by appellee. In August 1997, appellee evicted appellant from his apartment based upon appellant's failure to pay his rent. After appellant was evicted, appellee alleged that appellant:
 Beginning on or about August 1997, [appellant] has done acts which seriously alarm, annoy, and harass employees and former employees of the [appellee] as follows: [Appellant] verbally abused and physically confronted some of [appellee's] female employees and former employees, has followed at least one former employee to her new job and harassed her and threatened her, has attempted to run over another employee with an automobile, has called [appellee's] attorneys stating to a female attorney that he was drunk and lying in bed thinking of her, has accused another one of [appellee's] attorneys of being a child molester and has threatened to place this information on the Internet, has issued letters to [appellee] threatening [appellee's] legal counsel and libeling [appellee's] employees, has continued to send faxes to [appellee's] counsel despite being requested to desist such activity and has threatened to disrupt the legitimate business activities of [appellee].
On June 23, 1998, appellee filed a complaint for a permanent injunction against appellant. Appellee requested:
 1. A temporary restraining order prohibiting [appellant] from having any contact with [appellee's] employees or from coming on the property of [appellee].
 2. A preliminary injunction prohibiting [appellant] from having any contact with [appellee's] employees or from coming on the property of [appellee].
 3. [Appellant] to be permanently enjoined from coming onto any property owned by [appellee], and from having any contact with any past, current or future employee of [appellee] by telephone or otherwise.
Appellant filed his answer to appellee's complaint on July 24, 1998. Appellant included in his answer a counterclaim against appellee for $610,000 alleging that appellee had abused the legal process.
On August 6, 1998, the parties met before a magistrate for a hearing regarding appellee's complaint for a preliminary and/or permanent injunction against appellant. During the day, a settlement agreement was negotiated in the presence of the magistrate. On August 7, 1998, an "Agreed Entry and Order for Permanent Injunction" was filed with the trial court. The entry states:
 On the 6th day of August, 1998, this Court considered the application of [appellee] for a permanent injunction on the verified Complaint, notice having been waived by [appellant].
 The Court further notes that the parties to this action have stipulated the following facts:
 [Appellee] believes that [appellant]'s conduct has amounted to harassment of [appellee] and of its employees and that such conduct, unless enjoined, will cause [appellee] and its employees to suffer irreparable harm.
 [Appellant] denies that he has harassed [appellee] or its employees, and/or made any defamatory statements as alleged. However, in the interest of resolving and settling all matters between the parties and on [appellee]'s representation that none of its employees will contact or harass [appellant], he does agree to the issuance of a permanent injunction.
 The parties agree that the following permanent injunction be issued by the Court, permanently restraining and enjoining [appellant] from coming onto any and all property owned or managed by [appellee] (and a list of current properties will be provided [appellant]). Said properties are identifiable by signs, logos, or by other visible, identifiable markings. [Appellant] is also permanently enjoined from knowingly contacting threatening or harassing any of [appellee]'s past, present, or future employees by telephone, facsimile, or any other mechanical or electronic means, in writing, or in person, anywhere, or at any time, including, but not limited to their homes or their place of work. [Appellant] is also permanently enjoined from making any defamatory statements against [appellee] and its past, present, or future employees. Further, [appellant] agrees not to seek to rent another apartment from any of [appellee]'s communities. This agreement shall in no way prejudice any rights and remedies of individual employees. No bond shall be paid by [appellee].
 Each party agrees to dismiss any and all pending civil actions including the counterclaim, the allegation of contempt in this action, and the collection action. The collection action was previously dismissed pursuant to Civ.R. 41(a). Pursuant to this agreement, it will not be refiled unless this Court determines that there has been a willful violation of this Order by [appellant].
 Each party by signing below hereby acknowledges a receipt of a copy of this Agreed Entry and Order.
The entry was signed by appellee's attorneys, appellant's attorney, and by a judge. The entry also included a signature for appellant "per authority" to appellant's attorney. A judgment entry dismissing the counterclaim and contempt action was filed by the trial court on August 19, 1998. Appellant filed a notice of appeal on September 3, 1998, and he presents the following assignment of error:
 The court erred in permitting the signature or [sic] the attorney to be considered valid in the absence of any evidence that the attorney was acting in his clinet's [sic] instructions as required by the Disciplinary Rules.
Appellant argues in his assignment of error that the settlement agreement is invalid because he never signed it. Appellant contends that he did not authorize his attorney to sign the settlement agreement. Appellant further contends that he fired his attorney over the telephone on August 6, 1998 prior to his attorney signing the agreement.
A review of the record does not support appellant's claim that he did not authorize his attorney to sign the settlement agreement. However, a review of the record supports a finding that appellant's attorney was authorized to sign the settlement agreement. During the hearing on August 6, 1998, the magistrate stated that even though appellant was not present at the hearing because "he was not feeling well, that he — wished to leave; that he gave Counsel the authority to sign the agreement." The magistrate asked appellant's attorney to "put on the record" his understanding that appellant had given him the authorization to sign the agreement over the telephone. The magistrate also asked Gayle Westbrook "[a]s an attorney and officer of this Court" to state that she had also spoken with appellant over the telephone, confirming that appellant had given his attorney authorization to sign the settlement agreement. Appellant's attorney also stated that the authorization from appellant to sign the settlement agreement was given after he had read to appellant "the terms of the entry as modified, the last modification." The magistrate thereafter stated: "I find that we do in fact have a settlement agreement."
Accordingly, we find that the record does not support appellant's claim that his attorney was not authorized to sign the settlement agreement on behalf of appellant. Appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Appellee has also filed a motion for attorney fees and costs pursuant to App.R. 23. App.R. 23 states: "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." Appellee argues that appellant's appeal is frivolous because his "appeal represents nothing more than the Appellant's obstinate refusal to accept his agreement in this case."
A frivolous appeal is essentially one which presents no reasonable question for review. Enyart v. Columbus Metro. AreaCommunity Action Org. (Mar. 31, 1998), Franklin App. No. 97APE08-1211, unreported (1998 Opinions 909, 915). " '[S]anctions under App.R. 23 serve two vital functions: they compensate the nonappealing party for the expense of having to defend a spurious appeal and, by deterring frivolity, they help preserve the appellate calendar for cases truly worthy of consideration.' " Tessler v. Ayer (1995), 108 Ohio App.3d 47,58, quoting Nwabara v. Willacy (May 6, 1994), Cuyahoga App. No. 65450, unreported.
"Ohio law has consistently recognized that a settlement agreement constitutes a binding contract between two parties."State v. Butts (1996), 112 Ohio App.3d 683, 686, followingSpercel v. Sterling Industries (1972), 31 Ohio St.2d 36, paragraph one of the syllabus. A settlement agreement voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the court. Ross Equip. Corp.v. Riggs (Feb. 12, 1999), Geauga App. No. 98-G-2136, unreported, following Spercel, 31 Ohio St.2d 36, 39. "It is within the sound discretion of the trial court to enforce a settlement agreement and this court has no authority to set aside the judgment of the trial court where the record contains some competent, credible evidence to support its decision regarding the settlement." Ross Equip. Corp. "Neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement." Walther v. Walther (1995), 102 Ohio App.3d 378,383.
In the present case, appellant is appealing a settlement agreement that was approved by the trial court and is supported by competent, credible evidence. The only argument that appellant presents to contest the settlement agreement is his bare allegation that he did not authorize his attorney to approve the settlement agreement. However, there is no evidence in the record to support his allegation. It is fundamental that appellate review is limited to the record as it existed at the time of judgment. State v. Williams (Apr. 29, 1999), Franklin App. No. 98AP-975, unreported (1999 Opinions 988, 997). See, also, McKay v. Cutlip (1992), 80 Ohio App.3d 487, 490, fn. 3; App.R. 12(A).
Additionally, a review of the record shows that appellant has attempted to use the judicial system to force appellee to incur legal expenses. For example, in a letter to appellee dated June 10, 1998, appellant stated that since appellee's counsel had filed a motion opposing appellant's request for depositions, appellee's counsel "will be held accountable by me, even if takes 10 years and $20,000 in appeals." In another letter to appellee, appellant stated:
 So if you want to play games, or if your personnel is not bright enough to handle tenant/landlord law and practices properly, then you and I will go the route of claim and counter-claim, discovery, deposition, production of documents interrogatories, and trial. Doesn't bother me. I will be pro se and I will prevail.
Appellant also wrote a letter to appellee's counsel on August 20, 1997, shortly after being evicted from his apartment, "to advise you that I am filing a complaint against you with The Columbus Bar Association and/or the ethics committee of the Ohio Supreme Court." A sworn certificate of one of appellee's attorneys states in part: "Each time a hearing in civil or criminal court is near, [appellant] launches into a frenzy of threats against [appellee] and counsel for [appellee]." Additionally, a review of appellee's complaint against appellant shows that it was not to recover monetary damages, but instead simply an attempt to get an injunction against appellant to keep him from harassing appellee's employees.
Accordingly, we find that appellant has failed to present a question for this court to review because: (1) the question he presented in his assignment of error is not based upon evidence in the record; and (2) the record conclusively shows that appellant's attorney was authorized to sign the binding settlement agreement by appellant, the trial court approved the settlement agreement, and therefore "this court has no authority to set aside the judgment of the trial court." Additionally, the record also shows that appellant has attempted to use the legal system in order to cause appellee to incur legal expenses. Therefore, we sustain appellee's motion and find that, pursuant to App.R. 23, appellant has presented a frivolous appeal, and appellant is ordered to pay $1,780 of appellee's attorney fees and costs.
Judgment affirmed; motion for attorney fees and costsgranted.
LAZARUS, P.J., and BOWMAN, J., concur.